## SABRA THOMPSON vs. THE STATE.

1. A count, in an indictment for obstructing a public road, which alleges that the defendant " a certain impediment, to-wit: a large quantity of logs, sticks, brushwood and dirt, did erect and cause to be erected," &c., is good.

2. It is not necessary that the width or grade of the road charged to have been obstructed should be set out in the indictment.

3. When the proceedings of the Commissioners' Court in the establishment of a public road are removed by *certiorari* into the Circuit Court, and the order establishing the road is there quashed and the *supersedeas* perpetuated, the judgment of the Circuit Court applies only to the proceedings then before it, and has no effect on an order subsequently made upon a new and distinct application.

4. A crop which is sown or planted in an enclosure after the Commissioners' Court has passed an order establishing a road through it is not a "growing crop" within the protection of the statute, (Clay's Digest 507, § 4) although it may be growing at the time the road is ordered to be cut out.

5. A literal interpretation, which would defeat the purposes of a statute, will not be adopted, if any other reasonable construction can be given to it.

6. When a person is indicted for obstructing a public road, and it is shown that he had extended his fences across the road while a former order of the Commissioners' Court establishing it, which was afterwards quashed by the Circuit Court, was in full force, the record of the former proceedings had by the Commissioners' Court is irrelevant and inadmissible to show the defendant's motive in obstructing the road after it had been again established.

7. And the admission of the record for that purpose is an error for which the judgment of conviction will be reversed.

ERROR to the Circuit Court of Talladega.

Tried before the Hon. E. Pickens.

RICE & MORGAN, for plaintiff in error.

1. Courts which originate in the common law possess a jurisdiction which must be regulated by the common law, until some statute shall change their established principles; but courts which are *created by written law, and whose jurisdiction is*

*defined by written law,* cannot transcend *that jurisdiction.* 4 Cranch, 93, 8 How. (U. S.) Rep. 441.

2. Where by *statute* a special authority is delegated to particular persons to take away a man's *property* against his will, it must be *strictly* pursued, and must appear to be so upon the *face* of the order. Rex v. Croke, 1 Cowper's Rep. 26; Commissioner' Court v. Thompson, 18 Ala. Rep. 694.

3. If the proceedings of the Commissioners' Court of a particular county, in the establishment of a road, do not show affirmatively that the road established lies within the limits of that county, its jurisdiction cannot be sustained, and therefore its proceedings are *void,* especially as to *the owner of the land* over which the road passes. Commissioners' Court v. Thompson, 18 Ala. Rep. 694; Carter v. Hinkle, 13 Ala. Rep. 529; 7 Ala. Rep. 578; 5 Blackf. Rep. 462; Wightman v. Karsner, January Term, 1852.

4. The provision contained in the second section of the act of 1836, (Clay's Dig. 507, § 4,) in these words, " but no new road shall be opened between the 1st day of March and 10th day of July in any year, nor open through any *enclosure* whilst there is a *crop growing* in the *same,"* must be construed as embracing a *restriction upon the power* to open a new road, and as *restraining* the exercise of that power entirely between the 1st day of March and 10th of July in any year, either inside or outside of an enclosure, and also as *restraining* the exercise of that power *on any day of any year,* as to *"enclosures"* in which *a crop* might at the time be *growing.* 3 Howard's (U. S.) Rep. 707; 13 Ala. Rep. 529; Daniel v. Sorrelle, 9 Ala. Rep. 445; 2 Cowen's Rep. 424; 7 Ala. Rep. 578.

5. The judgment of the Circuit Court of Talladega county rendered at its Fall Term, 1849, quashing the order for this *same road,* and declaring the *supersedeas perpetual,* (the said judgment never having been reversed,) is conclusive upon *the parties thereto,* to-wit: the *Commissioners' Court* and Sabra Thompson; and rendered any further action of the Commissioners' Court *void* as to *that road,* so far as said Sabra Thompson was concerned. 3 Strobhart's Equity Rep. 44; 16 Ala. Rep. 17; 7 Ala. Rep.; 16 Ala. Rep. 271.

6. No matter how much legal evidence there was to establish any particular point, still if the court admitted any illegal

evidence on that point, the error is one for which there must be a reversal. 8 Porter 258; 14 Ala. Rep. 681; 1 Munford 288. Several portions of the evidence are clearly illegal.

7. The true question arising out of the fact, that Sabra Thompson had "*a crop growing in the enclosure*," was a question involving only the POWER to *open the road* through *such enclosure.* This question of POWER to *open* the road could not be affected in any way by *her motive* or *intention* in sowing the crop, nor by the *size* of the crop. The existence of *the power to open* the road depends on *the fact* that there *was* NO *growing* crop in the enclosure; and this *power to open* the road cannot arise out of the existence of any particular *motive* or *intention* in sowing the crop. Whatever may have been the *motive* for sowing the crop, still that motive could not create the *power* to open the road through the enclosure, if a crop was growing therein, whether it was a large crop or a *small crop.* Six Carpenters' Case, 43 Law Library, top page 130; 3 How. (U. S.) Rep. 707, 715. (This shows that the testimony as to *motive* was irrelevant and illegal, and erroneous.)

8. The fourth count of the indictment is defective, for several reasons, among which may be noticed the following, to-wit: 1. It assumes erroneously that the provision *against erecting* a fence, bar, "*or other impediment*," in the seventh section on page 508 of Clay's Digest, is precisely equivalent and tantamount to the provision against *felling* a tree, brush, "*or other obstacle*" in the same section. 2. It confounds distinct clauses of the same statute, and violates the well settled rules for construing statutes. 3. The description of the road is too vague. Bush v. The State, 18 Ala. Rep. 415. 4. The width or *grade* of the road is not averred in the indictment. This is a fatal omission, and would be fatal to the order for the road. 2 U. S. Digest (supplement) 935, § 169.

9. A new road does not become a public road until it is actually *opened according to the statute, to the use of the public.* 21 Pick. Rep. 48–49; Kelley v. Horton, 2 Cowen 424.

The proof shows clearly that the road had not been *opened to the use of the public*, when the alleged obstructions occurred.

10. The right of the owner of land over which the road passes, to regard and treat the proceedings for establishing a

new road as void, *exists in cases* where other persons could not treat them as void. They are *void as to the owner* in some cases, where they are not void as to others. 3 Metc. Rep. 445; 4 Iredell's Rep. 318.

11. Obstructions or inpediments thrown in the way of an overseer, who is *opening* a new road, are not indictable, and are *not charged in this indictment*, and evidence as to such obstructions or impediments was improperly admitted.

The case cited (Kelly v. Horton,) from 2 Cowen 424, shows that although the road is laid out by a valid order, yet the *overseer* may be, and is a *trespasser* in *opening* it, if he disregards any provision of law for the benefit of the owner of the land, (such as a protection by *sixty days notice*, or "a GROWING crop.")

12. However *small* the *crop which* was admitted to be *growing* in "the enclosure," this protected the enclosure "*whilst*" it was growing; even if there was some woodland in the same enclosure. Com. v. Carmalt, 2 Binney's Rep. 235.

13. The admission of the declaration of defendant, for the declared purpose for which it was admitted, was a clear error, and could not fail to mislead the the jury; although the declarations of a defendant may be admitted, wherever they relate to any matter which is *relevant* in the cause, yet if *the subject matter* of the declaration is *irrelevant*, it must be rejected.

14. But if it were conceded, for the sake of argument, that the *intention* of defendant could destroy the plain *restriction of the statute on the power to open the road* through the enclosure, and deprive the enclosure of the protection given to it by statute, then the *intention* must be proved to be an intention to *evade or defeat the law*, and that intention, as *matter of fact*, must be left to the jury, which the court did not do. Oliver v. The State, 17 Ala. Rep. 587.

M. A. BALDWIN, Attorney General, with whom was L. E. Parsons, for the State.

1. The power of the Commissioners' Court of Roads and Revenue, in relation to laying out and establishing public roads, is judicial, and their proceedings are conclusive until reversed. Robins v. Town of Bridgewater, 6 N. H. 524; Woodman v. Somerset, 25 Maine 303; Loring v. Bridge, 9

4

Mass. 124; Com. v. New Milford, 4 ib. 446; Clark v. Holmes, 1 Doug. (Mch.) 399; U. S. v. Arredondo, 6 Peters 729.

Where a road, established by proper authority, passes over the land of another, he cannot close up or obstruct it, for any matter or cause which, had it been presented properly to the Commissioners' Court, would have defeated the establishment of the road. The fact that a road passes over the growing crop of another, is a matter which no one can plead against the establishment of the road, but the owner thereof; it is then voidable, and not absolutely void. The object of giving notice before laying out and establishing a public road is to give (amongst other things) the owner of lands, through whose growing crop the road proposes to pass, an opportunity to object; if he does not do so, the law presumes his acquiescence. He·is entitled to damages, in some instances, for the injury he sustains, by reason of the road passing through his land: *Provided he makes application at the next court after the laying out the road.* Suppose he makes no application for damages, would that authorize him to obstruct the road after it was established? Witherspoon v. The State, Mart. and Yerg. 119; 8 Barr 522; 9 Johns. 365; 2 Bibb 19; 7 Wend. 145; 3 Met. 448; 5 Ohio 273.

2. After the report of the Committee of Review, locating the road, is received and adopted by Commissioners' Court, the road from that moment becomes a public road. Clay's Dig. 507, § 4–5; The State v. Dover, 10 N. H. 396.

The road was not opened until February, 1851, at which time the crop of 1850 had been gathered. The order establishing the road was in August, 1850, at which time the wheat crop of that year was not planted or sown in the enclosure of defendant, through which the road passed. It was folly then in the defendant to sow her grain, when she knew it would not ripen before the road was to be open by law. The right of the defendant to gather this crop of wheat assimilates itself to the right which *a lessee, for a term of years, has to the emblements that are growing when his claim expires.* If the latter plant a crop, which does not ripen or is not gathered before his term expires, the emblements become the property of the landlord. 2 Black. Com. 145; 4 Kent.

Com. 109; Razor v. Qualls, 4 Blackf. 288; Whitmarsh v. Cutting, 10 Johns. 360; Bain v. Clark, ib. 424; King v. Fowler, 14 Pick. 238.

CHILTON, J.—The plaintiff in error was indicted for erecting an impediment across a public road. The indictment contains five counts, to each of which there was a demurrer.

It is argued in this court that the fourth count in the indictment is bad, as confounding different clauses of the same section in the statute, and treating them as equivalent, when they are totally distinct. By an examination of the statute in connection with the count, we do not think the objection is well founded. The statute enacts, that "if any person shall erect, or cause to be erected, across any public road, a fence, bar, or other impediment, or fell a tree, or brush, or other obstacle on or across the same, and shall not remove it within twenty-four hours thereafter," &c., that such person shall be liable to indictment, &c. Clay's Digest, 508, § 7. The fourth count charges that Mrs. Thompson "a certain impediment, to wit: a large quantity of logs, sticks, brushwood and dirt, did erect and cause to be erected across a certain public road, situate," &c. Now, the impediment thus erected is clearly distinguishable from a fence or bar in the foregoing clause of the act, and also from the *felling* of a tree, brush or other obstacle, as subsequently enumerated; but it falls directly within the inhibition of erecting any "other impediment" than such as are particularly mentioned. A much more formidable impediment could be erected of logs, brushwood and dirt, than of rails in the form of a fence or bars, and we doubt not that such impediment was as much within the contemplation of the Legislature, in enacting the statute, as it certainly is within the mischief intended to be remedied.

Neither is the objection, that the indictment does not set out the width or grade of the road, well taken. It is sufficient that it is a public road. Whether it be of the first, second or third grade, can make no difference, since the statute makes the obstructing of either alike indictable, and visits the offender with the same measure of punishment. We entertain no doubt as to the sufficiency of the indictment.

The main question, and the one principally relied on for a

reversal by the counsel for the plaintiff in error, arises out of a bill of exceptions, and may be thus stated: It appears that in August, 1849, the road charged to be obstructed was established by the Commissioners' Court of Talladega, and that the portion running over the land of the plaintiff in error had been cut out by order of the court. That at the Fall Term of the Circuit Court, 1849, these proceedings of the Commissioners' Court were quashed and set aside, at the instance of Mrs. Thompson, and that the supersedeas to the proceedings of the Commissioners' Court was by the Circuit Court rendered perpetual. That afterwards, viz: in May, 1850, another application was made for the establishment of the road, and the same was established by the Commissioners' Court, after a jury of review had passed upon it, at the August Term, 1850. In the order establishing it, and which particularly describes where it shall run, it is stated, after tracing the road to Mrs. Thompson's line, "thence with her line to a stake in the rear of W. B. McClellan's negro cabins, thence along the line of the road, as it was cut out under a former order of this court, through the lands of Mrs. Thompson, to a post oak, marked," &c. The road was laid off into sections, and overseers were appointed, and ordered to open the same according to law. It further appears, that after the order of August, 1849, but before that of August, 1850, Mrs. Thompson had extended her fencing with her lines crossing the route of the proposed road, uniting her fences on the side of the mountain in the form of an angle. That she thereby enclosed a pond useful for purposes of husbandry, and also the family grave yard. That in this enclosure she sowed in a small isolated patch of an acre and a half, some wheat, which was growing on it in February, 1851, when the overseer with his hands took down her fences where they crossed the road, and removed the logs, brush, &c., which had been placed across it. It was shown that this crop of wheat was sown after the order of August, 1850, had been passed. After the road had thus been opened, Mrs. Thompson rebuilt her fences across it, and obstructed it otherwise. It was insisted in the court below, and is here also contended, that, at the time the overseer opened this road through the enclosure of Mrs. Thompson, she had a growing crop within it, and that

Sabra Thompson v. The State.

consequently the act of the overseer was void, as being opposed to the statute, which declares that the road shall not be opened between the first of March and tenth of July in any year, nor *"through any enclosure whilst there is a crop growing in the same."* The ruling of the circuit judge, as indicated by the charge given to the jury, was opposed to this view. The question is, whether, under the facts of the case, the plaintiff in error was justifiable in fencing up the road.

As to the effect of the judgment of the Circuit Court, in quashing the proceedings of the Commissioners' Court of August, 1849, and perpetuating the supersedeas, we need only remark, that it applies only to the proceedings then before the Circuit Court, and could have no effect upon an order subsequently made upon a new and distinct application.

Upon the main question, we are of opinion that, as Mrs. Thompson must be presumed to have had notice of the order of August, 1850, establishing this road, and designating the particular route over which it was to run, after permitting the order to pass for opening it, she could not render such order nugatory, and thwart the object of the statute, by sowing this small patch of wheat.

We need not consider the question whether the plaintiff in error, after the road has been established by a court of competent jurisdiction, and cut out by an officer of its appointment, can collaterally call in question the proceedings of the court, or of the overseer who has acted in obedience to its command. For, giving to this statute a reasonable construction, we feel constrained to hold that the growing crop, mentioned in the conclusion of the fourth section, does not embrace a crop planted or sowed *after* the order establishing the road. Such a construction as the one contended for by the counsel for the plaintiff in error would enable any person, over whose land a road was established, to thwart the action of the court in its attempt to provide, as contemplated by the statute, for the public convenience and necessity, by planting and having some description of crop always growing in his enclosure, as may well be done in this climate. Such construction would therefore be unreasonable, as it would frustrate the manifest object which the Legislature had in view.

Besides, it would seem to be opposed to the concluding

clause of the next succeeding section, which says, that the court in the order may appoint the time for cutting out the road. Now, it may happen that at the time the order is granted there is no growing crop, and a time is fixed for cutting out the road, yet before the time arrives the owner of some farm has his wheat, or his turnips, or some other crop growing, and before these cease to grow another crop succeeds, and so on *ad infinitum;* so that, notwithstanding the county has purchased and paid for the right of way, and a court of competent jurisdiction has established it, and ordered it to be cut out, a capricious individual would have it in his or her power to forestall and frustrate the whole proceeding.

If it be said the letter of the statute is opposed to this view, and that the restriction against opening the road through an enclosure, while there is a crop growing thereon, is general, we reply, that an interpetation should never be adopted which would defeat the purpose of the statute, if any other reasonable construction may be given to it, 9 Wheat. 381; and that the literal interpretation of an act is not always that which either reason or the law approves. The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, often require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver. Stradling v. Morgan, 1 Plowd. 200; 2 ib. 463; 4 Litt. 377; and cases cited, 1 U. S. Dig. 484.

It results from what we have said, that there was no error in the charge which the court gave, and that the charges prayed for were properly refused.

In the progress of the trial below, the State offered the record of the proceedings had in the Commissioners' Court in August, 1849, establishing a road over the land of Mrs. Thompson, as before stated, which proceedings had been quashed in the Circuit Court. The bill of exceptions shows that these proceedings were offered and admitted, only to show that after the order was made, and while in full force, the defendant had extended her fence across said road, as the

evidence previously introduced showed, "so that the jury might judge of the motive which had influenced her in obstructing this road." We are wholly unable to perceive what connection Mrs. Thompson's violation of the law, or disregard of the order of the Commissioners' Court in 1849, has with her obstructing this road in 1851. If she committed an offence then, by enclosing her land, over which the road had been cut out, she was answerable for that by a distinct proceeding. If, by reason of the irregularity of the proceedings of 1849, she might well disregard them, and go on and erect her fence, then she is guilty of no wrong by so doing, and no inference prejudicial to her could properly have been drawn from it. So that this proof, for the purpose of explaining the motive with which the subsequent act was done, was irrelevant and inadmissible. We think the record of the quashed proceedings might properly have been read, to explain the subsequent order which refers to them, as designating the proposed route for the road through Mrs. Thompson's land, but the same was not read for that purpose.

It may, however, be argued, that no injury resulted to the plaintiff in error by the improper admission of this testimony. We have considered this point, and are not prepared to say that she could not by possibility have been prejudiced by its admission. It was calculated to impress upon the minds of the jury the belief that she was disregardful of the orders of the Commissioners' Court, and consequently was a proper subject to be made an example of.

For this error, let the judgment be reversed and the cause remanded.