## GREENE *vs.* McGHEE.

[APPLICATION BY SHERIFF FOR MANDAMUS AGAINST COMTROLLER.]

1. *Compensation of sheriff for conveying convicts to penitentiary.*—In conveying a convict to the penitentiary, it is the duty of the sheriff to travel "the land route usually traveled" within this State (Code, § 3931); and he has no authority to carry him through other States, although "the land route usually traveled," between the court-house of the county and the penitentiary, may be through those States.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. JOHN GILL SHORTER.

THE appellee in this case, who was the sheriff of Lawrence county, applied to the circuit court for a *mandamus* to William J. Greene, the comptroller of public accounts, to compel that officer to draw his warrant on the State treasurer, in favor of the petitioner, for the amount claimed by him as compensation for conveying a convict to the peni-

tentiary. The amount claimed by the petitioner was $338 44; the distance from Moulton, the county-site of Lawrence, to the penitentiary, being estimated at nine hundred and fifty miles, by way of the railroad through Chattanooga, Tennessee, and Atlanta, Georgia, to Montgomery. The comptroller refused to draw his warrant on the treasurer for more than $156 75, insisting that the petitioner claimed for traveling a greater distance than the law authorized. In the circuit court, the defendant admitted all the facts stated in the petition, "except that the distance between Moulton and the penitentiary, by the land route usually traveled, was nine hundred and fifty miles;" consented that that fact should be determined by the court, upon evidence to be adduced, and waived a rule *nisi.* "Thereupon, the petitioner introduced three witnesses, who stated, that they knew the land route usually traveled from Moulton to the penitentiary;" that the land route usually traveled, for the last three years, has been by way of the railroad to Chattanooga, Tennessee, thence by railroad to Atlanta, Georgia, thence to Montgomery, and thence to Wetumpka by land; and that the distance by that route, going and returning, is more than nine hundred and fifty miles. Said witnesses further stated, that there was a nearer land route through the State of Alabama, which was not direct, and which was sometimes, but very seldom, traveled, and was not the land route usually traveled." On this evidence, the circuit court awarded a *mandamus;* and its judgment is now assigned as error.

M. A. BALDWIN, Attorney-General, for the appellant.
SAMUEL F. RICE, *contra.*

A. J. WALKER, C. J.:—The law of this State allows to sheriffs compensation for the removal of convicts to the penitentiary, at a specified rate for every twenty miles of the distance to the penitentiary and back, by "the land route usually traveled."—Code, § 3931. The land route usually traveled, from Moulton, the county-site of Law-

rence county, is upon the line of railroad passing through a portion of Tennessee and Georgia; and the appellee, being the sheriff of Lawrence county, claims compensation according to the distance upon that route; there being, also, another land route, exclusively within the State of Alabama, which is sometimes traveled. The question of this case is, whether he is entitled to compensation according to the usually traveled land route, which thus passes through two other States, or according to the route by land within the State of Alabama.

Certainly, if the section of the Code above referred to is enforced according to its literal import, the appellee would be entitled to compensation for the distance upon the route through Tennessee and Georgia. But " the literal interpretation of an act is not always that which either reason or the law approves."—*Thompson v. State*, 20 Ala. 54. In the construction of statutes, we are not to adhere to the letter, at the expense of the true meaning and intent of the legislature.—Smith on Stat. 658, § 510. It is proper that the purpose of the legislature, and the subject-matter of the enactment, should be considered, that, if possible, such a construction should not be adopted, as would lead to absurd or grossly unjust consequences; that the intention should be hunted through the entire act; that effect should be given to all its parts, and that all acts upon the same subject should be construed in *pari materia*.—Smith's Com. on Statutes, §§ 518, 550, 574, 575; Sedgwick on Stat. and Con. Law, 238.

The main purpose of the article in the Code, in which section 3931 is found, is to provide for the safe removal of convicted felons to the penitentiary. This purpose is patent in almost all the sections of the article; and the different sections are framed in reference to each other, so as to provide every conceivable safeguard for the safe delivery of the convicts at the penitentiary. If the sheriff may convey the prisoners into other States on the route, the purpose so clearly indicated, and for the accomplishment of which such careful provision is made, may be utterly frus-

trated. This results from the fact, that the authority of the sheriff to execute the sentence of the court is necessarily confined to the jurisdiction of this State. The question of the effect of a criminal sentence, when presented in the judicial tribunals of a sister State, has been several times discussed by the courts in this country, and the conclusions attained are not altogether harmonious.—Story on Conflict of Laws, § 621; *Commonwealth v. Green,* 17 Mass. 515; *Chase v. Blodgett,* 10 N. H. 22. It is not necessary for us to enter upon that subject. Whether a penal sentence does or does not fall within the provision of the constitution of the United States, which declares, that "full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State," is an immaterial inquiry here; for, however that may be, it is certain that a sheriff of the State of Alabama can have no authority to go outside of the limits of the State, in the execution of a judicial sentence. His authority must necessarily cease when he leaves the jurisdiction of the State of Alabama, whether that authority be to execute a judgment in a civil case, or the sentence in a criminal case. If the statute under consideration should be allowed the operation contended for on the part of the appellee, we should convict the legislature of the absurdity of consulting especially for the safe removal of convicts to the penitentiary, and yet authorizing the sheriff to carry them where his authority would cease. The argument already made is fortified by reference to other sections of the article devoted to the subject of the removal of prisoners to the penitentiary. Section 3924 gives to the sheriff, in the contingency of the disability of any of his guards to discharge their duties, the power to summon new guards "in any county through which he may pass." Section 3926 also gives him authority to summon additional guards, when it is rendered necessary by an attempt to rescue the convict, or other unforeseen danger; and section 3927 makes it a misdemeanor, for any person, under fifty years of age, to refuse, without a good excuse, to obey the summons of him as a guard by the

sheriff. Section 3928 places the guards under the control of the sheriff, and makes disobedience of his directions, in relation to the safe conveyance of the prisoner, a misdemeanor. Section 3929 exempts the officers and guards attending the prisoner from arrest, except for felony and breach of the peace. Section 3936 makes it the duty of jailors to receive and keep prisoners on their way to the penitentiary; and, lastly, section 3937 makes it an indictable offense, for the prisoner to escape, or attempt to escape. All these provisions, which are to be considered along with the section fixing the sheriff's compensation, and are really to be treated as parts of the same act with that section, indicate most clearly the intention that a convict, in the process of removal to the penitentiary, should be kept within the State; and they become utterly ineffective and inoperative, as soon as he is carried out of the State. The sheriff could not summon guards in another State; persons so summoned could not be indictable, under an Alabama statute, for a failure to obey; neither the guards refusing to obey the sheriff's directions in another State, nor the convict attempting to escape in another, could be amenable to the criminal laws of Alabama; the qualified exemption of the sheriff and his guards from arrest could not be effectual beyond the limits of the State, and the sheriff could not avail himself of the jails in another State. The provisions of the Code upon that subject cannot be allowed their proper operation, if the sheriff is permitted to convey convicts to the penitentiary through other States; and the rules of construction, which we laid down at the outset of this opinion, require us to decide, that the sheriff has no authority to carry a prisoner through another State, and is not entitled to compensation for the increase of distance in consequence of his doing so, although he may go upon the usually traveled route. The land route usually traveled, over which he must pass, is the route within the State usually traveled.

It is urged against the foregoing construction of the statute, that the sheriff is required to make affidavit of the

number of miles " on the land route usually traveled;" that there may arise cases, in which there is no *usually* traveled land route within the State; and that, in those cases, the sheriff would be unable to make the prescribed affidavit. It is probable that there are court-houses in the State, from which there is no route to the penitentiary which is *usually* traveled through its entirety, or over which persons are accustomed to pass from the court-house to the penitentiary, in a continuous travel; and it may be, that there is no usual continuous travel from the court-house of Lawrence county to the penitentiary, along any road within the State. But we cannot think that, in such cases, it was the intention of the legislature to exclude the sheriff from any compensation. In such cases, a route leading to the penitentiary, and the different parts of which are usually traveled, and which is in a reasonable direct course from point to point, is, within the meaning of the law, the land route usually traveled.

The judgment of the court below is reversed, and a judgment must be here rendered dismissing the petition; and the appellee must pay the costs of this court, and of the court below.

R. W. WALKER, J., not sitting.