# Smith *v.* Jones.

*Mandamus to Auditor, at Suit of Supreme Court Reporter.*

" *Funding act* " *of December* 19, 1873; *auditor's duty, under* 15*th section, in issuing warrants on treasury payable in state obligations.* — Under the "Act to provide for the funding of the domestic debt of this State," approved December 19, 1873 (Session Acts 1873, 40–56), the 15th section of which forbids the auditor to issue any warrant on the treasurer, after the 1st day of January, 1874, unless there are at the time funds in the treasury which can be applied to its payment; while the first

[Smith v. Jones.]

proviso to that section declares, " that any public creditor may, if he elect, receive payment of his claim on the warrant of the auditor, so expressed, in the obligations herein authorized, "*if such be then in the treasury,*" the italicized words simply mean, that the obligations must be in the possession, or under the control of the proper state officers, and not that they shall have been issued by the auditor, and shall have come back into the treasury in payment of taxes; and it is the duty of the auditor, on the demand of any state officer who elects to receive payment of his salary in such obligations, to draw his warrant on the treasurer, in favor of such officer, expressing on its face that it is payable in such obligations. (BRICKELL, J., dissenting.)

APPEAL from the City Court of Montgomery.

Tried before the Hon. JNO. D. CUNNINGHAM.

This was an application by petition, by Thomas G. Jones, the official reporter of the decisions of this court, for a *mandamus* to Robert T. Smith, the auditor, requiring that officer to draw his warrant on the treasurer, in favor of the petitioner, for the amount of his salary as such reporter for the month of January, 1874, expressing on its face that it was payable in the obligations of the State authorized by the " Funding Act " of December 19, 1873. The petition was filed on the 4th March, 1874, and alleged, that the petitioner's claim for his said month's salary was presented to the auditor on the last day of the month, when it was by law payable, was marked by him as correct and allowed, and was duly filed for payment in the order of its presentation; that on the 3d March, 1874, when the claim was regularly payable in its order, the petitioner asked the auditor to draw his warrant on the treasury, in favor of the petitioner, for the amount of the claim, payable in the obligations of the State, the issue of which was authorized and provided for by the act approved December 19, 1873, entitled "An act to provide for the funding·of the domestic debt of this State," and which had been issued, and placed by the auditor in the treasury; and that the auditor refused to do so, " on the sole ground that, since so placing said obligations in the treasury, he had become doubtful of his power to comply with any such demand, or to place said obligations in the treasury for any such purpose, or to draw any warrant on the treasurer payable in such obligations."

The auditor appeared, admitted all the facts alleged in the petition, waived a rule *nisi*, and consented that, if the petitioner was entitled to relief, a peremptory *mandamus* might issue immediately; and it was agreed, by consent entered of record, that either party might take an appeal to the present term of this court. The court held the petitioner entitled to relief, and rendered judgment accordingly; and its judgment is now assigned as error.

The case involves the construction of the 15th section of the said act, which is in these words : " Sec. 15. *Be it further enacted*, That from and after the first day of January, 1874, it shall

[Smith v. Jones.]

be the duty of the auditor to examine and pass upon all claims presented against the State, and directed by law to be paid out of the treasury, and, if found to be correct, to certify to their correctness, by marking the same correct; and shall, in red ink, attach his signature thereto, on the face of the allowed claims; and shall cause all such allowed claims to be filed in his office, in the order of their presentation; and in that order shall issue his warrants on the treasurer, to the holder of such allowed claims, for their payment; but he shall not issue any warrant on the treasurer therefor, unless there is at the time in the treasury funds which can be applied to the payment thereof; and no payments shall be made by the treasurer, except upon warrant of the auditor, as now directed by law. Warrants on the treasurer shall be paid only at the treasury of the State, and shall be paid in the order in which they are presented. *Provided*, That any public creditor may, if he elect, receive payment of his claim on the warrant of the auditor, so expressed, in the obligations herein authorized, if such be then in the state treasury. *Provided, further*, That this act shall not be construed to authorize the auditing and payment of any claims growing out of the railroad debt of the State. *Provided, also*, That no part of the certificates or bonds provided for by this act shall be used in liquidation of interest accruing on any railroad obligations in this State."

R. T. SMITH, *pro se*.

RICE, JONES & WILEY, *contra*.

B. F. SAFFOLD, J. — The appeal is from the order of the city court of Montgomery, granting a *mandamus* requiring the auditor to issue a warrant to the appellee, for the amount of his salary as reporter of the decisions of the supreme court of Alabama, for the month of January, 1874, to be paid in the obligations of the State, and to be so expressed in the warrant, as authorized by the act of December 19, 1873, " To provide for the funding of the domestic debt of this State." The issue is, whether the first proviso of the fifteenth section of the act, which authorizes the issue of a warrant, and its payment in the obligations, forbids, by its concluding words, " if such be then in the state treasury," the issue of the warrant, unless the obligations have been first put out by the auditor, in the ordinary operation of the act for funding purposes, and have come back to the treasury in the payment of taxes, for which they are expressly made receivable.

The act, in its fifteenth section, forbids the auditor, from and after the first day of January, 1874, to issue any warrant on

the treasurer, unless there are at the time in the treasury funds which can be applied to the payment thereof. No payments are to be made by the treasurer, except upon warrant of the auditor, as now directed by law. Warrants on the treasurer are to be paid only at the treasury of the State, and in the order in which they are presented. "*Provided*, That any public creditor may, if he elect, receive payment of his claim on the warrant of the auditor, so expressed, in the obligations herein authorized, if such be then in the state treasury." The section then expressly forbids, by two succeeding provisos, the auditing and paying of any claims growing out of the railroad debt of the State, or the use of the obligations in liquidation of interest accruing on any railroad obligations in this State.

It is manifest, that the main use intended to be made of the obligations was to fund in them the domestic debt outstanding on the 1st of January, 1874. It was supposed that the amount authorized — one million of dollars — would be required for that purpose. As the obligations were receivable in payment of taxes, it was contemplated that they would be returned to the treasury in that way. No matter what the intention of the legislature was in prohibiting the issue of warrants unless there are at the time in the treasury funds for their payment, the prohibition was only in case there were no funds. For it is immediately said, the warrant may be issued, if the public creditor will consent to receive the obligations in payment, if such were in the treasury. It was not intended that the obligations should remain in the auditor's possession, unused. The legislature knew, from the report of the auditor, what amount of warrants were outstanding. If the larger portion of them were hurried into the treasury in payment of taxes, before they were forbidden to be received in that way, to wit, the 1st of January, 1874, and the obligations are not needed for their funding, the simple addition of the words, "if such be then in the state treasury," to the express authorization of payment of claims in them after the 1st of January, 1874, ought not to control the evident purpose of the entire act, so as to defeat almost entirely its operation. The words quoted evidently were intended to mean, if any of the obligations were in the possession of the State. The law authorizing the monthly, and, in some cases, the quarterly payment, of the salaries of officers, the dues to sheriffs, the appropriations to charitable institutions, and, generally, the current expenses of the State, was not repealed, modified, or altered in any respect, save only that the warrant should not be drawn unless the State had at the time lawful money, or these obligations, to pay them with.

In further proof of the correctness of this construction, the auditor, after ample time, six months, given for the funding of

[Smith *v.* Jones.]

outstanding warrants, is authorized to exchange the obligations, with any one applying to make it, for United States currency, which he is to turn over to the treasurer, as funds upon which warrants might be drawn. If the domestic creditor may receive this United States currency, for which the obligations were given, why may he not receive the obligations directly in exchange for his warrant? The State satisfies his claim, and receives his warrant as evidence of it. He takes the obligations, instead of the one who would exchange the United States currency. It is immaterial to the State which of them has the obligations.

The title of the act is, " To provide for the funding of the *domestic debt* of this State." The petitioner shows that he is a *resident citizen* of the State, and that the allowed claim due him is for his salary as an officer of the State, which by law is payable monthly, on the last day of each month. This law of payment was not intended to be repealed by the act, if there was anything " in the treasury " or under the control of the State, subject to an auditor's warrant, to pay with. The auditor has no such discretion in the allowance of such claims, as he has in regard to special claims against the State. *Reynolds* v. *Taylor*, 43 Ala. 430.

We cannot, unless forced to do so by the plain terms of the act, conclude that it was the intention of the legislature to prevent a public officer from receiving pay in these obligations. The very authority given to the auditor, to exchange them to any person for United States currency, which currency is to be used in paying the warrants, is conclusive of an intention to allow the domestic creditor to receive them directly in payment of his claim or warrant. In *Thompson* v. *State* (20 Ala. 54), this court held, that a literal interpretation, which would defeat the purposes of the statute, will not be adopted, if any other reasonable construction can be given it. The reason is much stronger, when the words to be interpreted were evidently used incidentally only. See, also, Smith on Statutes, 662, 663. The precise formula, or manner in which the auditor shall execute the provisions of the law, must, of course, be left largely to his discretion. The judgment is affirmed.

BRICKELL, J., dissenting.