22 U.S. 381 (1824)
9 Wheat. 381
The EMILY and The CAROLINE, BROADFOOT, Claimant.
Supreme Court of United States.
February 7, 1824.
February 24, 1824.
*382 The causes were argued by Mr. Harper, for the appellant, and by the Attorney-General and Mr. M'Duffie, for the respondent.
*384 Mr. Justice THOMPSON delivered the opinion of the Court.
These cases come before the Court on appeals from decrees of the Circuit Court, for the District of South Carolina, affirming the decrees of the District Court, by which the vessels in question were condemned as forfeited, under the laws of the United States, in relation to the slave trade.
The information, in both cases are the same, except as to the name and description of the vessels; and the proofs differ in no respect, but in the state of preparation in which the vessels were found at the time of seizure; but this circumstance, according to the view taken by this Court of the law, under which these forfeitures have been incurred, is unimportant, and cannot vary the result. The *385 cases have been argued together, and it is unnecessary that they should be considered separately by the Court.
The informations are founded upon the first section of the act of the 22d of March, 1794, c. 187. [xi.] to prohibit the carrying on the slave trade from the United States to any foreign place or country; and on the second section of the act of the 2d of March, 1807, c. 77. [lxvii.] to prohibit the importation of slaves into the United States after 1st of January, 1808. Each information contains three counts; two upon the act of 1794, and one upon that of 1807. These acts, however, are precisely the same in those parts which are brought under consideration in these cases, and will not require to be separately noticed.
The objections on the part of the claimant, to the decree of the Circuit Court, are,
1. The insufficiency of the informations; and
2. That the proofs fall short of what is required, under the statutes, to work a forfeiture of the vessels.
The law (2 U.S.L. 383.) declares, that no citizen of the United States, or any other person coming into, or residing within the same, shall, for himself or any other person whatsoever, either as master, factor, or owner, build, fit, equip, load, or otherwise prepare, any ship or vessel, within any port or place of the United States, nor shall cause any ship or vessel to sail from any port or place within the same, for the purpose of carrying on any trade or traffic in slaves, &c. And if any vessel shall be so fitted out as aforesaid, for the said *386 purpose, or shall be caused to sail so as aforesaid, every such ship or vessel shall be forfeited, &c. The first branch of the prohibiting part of this section, is very broad and comprehensive, using various terms appropriate to the preparation for a voyage. "Shall not build, fit, equip, load, or otherwise prepare any ship," &c. In the forfeiting part of the section, these various terms are not repeated, but doubtless intended to be co-extensive, and included under the words so fitted out as aforesaid. Under this law, then, the forfeiture is incurred, either by fitting out, or, in other words, preparing a vessel, within the United States; or, by causing a vessel to sail from the United States for the purpose of carrying on the slave trade: two distinct acts, either of which draws after it the same consequence, the forfeiture of the vessel. The informations embrace both acts in the same count, pursuing the words of the law; and it is contended that, on this account, they are fatally defective; that one or the other of the acts should have been alleged, and not both stated in the alternative, as has been done. Objections of this kind, made at so late a period, if not entirely precluded, are not entitled to much indulgence; they ought, if well founded, to be made at an earlier day, when the information might be amended, and great expense and delay avoided. But the exception would, at no time, be available. In admiralty proceedings, a libel in the nature of an information, does not require all the formality and technical precision of an indictment at common law. If the allegations are such as plainly and *387 distinctly to mark the offence, it is all that is necessary. And where it is founded upon a statute, it is sufficient if it pursues the words of the law. And this is not at all at variance with what fell from the Court, when these cases were formerly before it, as explained by the note referred to by the Reporter, (7 Cranch, 496, and note at the beginning of the vol.) which states, "that the Court did not mean to decide, that stating the charge in the alternative would not have been sufficient, if each alternative had constituted an offence for which the vessel would have been forfeited." In the information now before the Court, it is so stated. One alternative is, fitting out, and the other, causing the vessel to sail; either of which, if proved, would induce a forfeiture. It is said, that this mode of alleging two separate and distinct offences, leaves it wholly uncertain to which of the accusations the defence is to be directed. This objection, if entitled to consideration, would apply equally to an information laying each offence in a separate count. This might, undoubtedly, be done; and yet no one interested in the proceedings could know, to which accusation to direct his defence. This kind of uncertainty is no objection, even to an indictment at common law. Distinct offences may be laid in separate counts, and the accused may not know upon which he is to be tried. The objection, if available at all, must go the full length of limiting every information to a single offence. This, we think is not required by any principle of justice, *388 or sanctioned by any rule of practice, applicable to Admiralty proceedings.
2. It is, in the second place, contended, that the proof does not sustain any of the counts, or show that any acts have been done, which can, under a just construction of the law, work a forfeiture of the vessels. These vessels, although cleared but, were seized before leaving the port of Charleston; of course there can be no proof applying to one of the offences laid in the information, viz. causing the vessels to sail from a port or place within the United States, &c. The proof is only applicable to the offence, which relates to the preparation of the vessels. And to incur the forfeiture under this branch of the act, it is said, the vessel must be completely fitted and ready for sea; that no state of preparation, short of this, will satisfy the terms of the law, or furnish any certain rule by which to determine when the offence has been committed, and the penalty incurred. We cannot, however, think that even applying to this law the most rigid rules of construction applicable to penal statutes, it will admit of the interpretation contended for on the part of the claimant. In construing a statute, penal as well as others, we must look to the object in view, and never adopt an interpretation that will defeat its own purpose, if it will admit of any other reasonable construction.
The object in view, by the section of the law now under consideration, was to prevent the preparation of vessels in our own ports, which were intended for the slave trade. Hence is connected *389 with this preparation, whether it consists in building, fitting, equipping, or loading, the purpose for which the act is done. The law looks at the intention, and furnishes authority to take from the offender the means designed for the perpetration of the mischief. This is not punishing, criminally, the intention merely; it is the preparation of the vessel, and the purpose for which she is to be employed, that constitute the offence, and draws after it the penalty of forfeiture. As soon, therefore, as the preparations have progressed, so far as clearly and satisfactorily to show the purpose for which they are made, the right of seizure attaches. To apply the construction contended for on the part of the claimant, that the fitting or preparation must be complete, and the vessel ready for sea, before she can be seized, would be rendering the law in a great measure nugatory, and enable offenders to elude its provisions in the most easy manner. The intention or purpose for which the vessel is fitting, must be made out so as to leave no reasonable doubt as to the object. This is matter of proof, and, generally speaking, to be collected from the kind of preparation that has been made. It is unnecessary to notice minutely the evidence taken in these cases. It shows conclusively, and beyond the possibility of doubt, that both the Emily and the Caroline were fitting out for the slave trade. In this the witnesses, both on the part of the United States and the claimant, concur. All the preparations were such as were peculiarly adapted to what the witnesses call slaving vessels, and not to those for the merchant *390 service. The ship carpenter, a witness on the part of the claimant, and who, of all others, was best qualified to give information on this subject, says, the vessels were fitting in a manner similar to that in which vessels generally are for the slave trade; that the Emily was almost complete, and the work in which he was engaged on the Caroline, was of the same character and description. There was no attempt whatever by the claimant, to explain the object of these peculiar fitments, or to show that the destination of the vessels was other than that of the slave trade. Nor has his counsel, on the argument here, set up for him any such pretence. We may, therefore, safely conclude, that the purpose for which these vessels were fitting, was the slave trade; and if so, the right of seizure attached. We can discover no sound reason for delaying the seizure until the vessels were on the point of sailing. It could only be necessary to render more certain, from their complete fitment, the purpose for which they were to be employed; and if that be satisfactorily ascertained, at an earlier stage of the preparation, the delay would be useless, and evasion of the law rendered almost certain.
Decrees affirmed.