SUPREME COURT. Saratoga General Term, December, 1855. *C. L. Allen James* and *Bockes*, Justices.

## THE PEOPLE *vs.* FRANK QUANT.

The legislature of this state has the power to enact a law prohibiting the sale of intoxicating liquors, and to provide penalties for its violation.

The act of April 9, 1855, so far as it prohibits the sale of intoxicating liquors, imposes penalties for its violation and provides for their enforcement, is not in conflict with the constitution of the United States or of this state.

Foreign liquor, after it has passed beyond the hands of the importer, or after the original package has been broken for use or sale, is not exempted from the operation of the statute by the last clause of the first section of the act.

Those sections of the old excise law, which prohibited the sale of all liquors in quantities less than five gallons without license, are not repealed by the act of 1855, but still remain in force.

The facts of this case are sufficiently stated in the opinion of the court.

*D. P. Corey,* for the people.

*James Finlayson,* for the defendant.

*By the Court,* JAMES, J.—The defendant, Quant, was arrested and brought before a justice of the peace of Montgomery county, charged with a violation of the first section of the act passed April 9th, 1855, entitled " an act for the prevention of intemperance, pauperism and crime." A motion was made to quash the warrant of arrest, for irregularity, which was denied. A complaint was then exhibited against the defendant, charging him with selling intoxicating liquors; keeping them with intent to sell; giving away such liquors, and keeping them with intent to give away, &c. The defendant took issue upon the complaint, and the cause proceeded to trial before a justice, as a court of Special Sessions, with a jury. The fact of selling gin, whiskey and beer, at various times, to be drank in his house, and of keeping it for the purpose of sale, was clearly

and distinctly proved; the jury found the defendant guilty, and the court adjudged him to pay a fine of $50 and costs. From that conviction and sentence this appeal is brought.

The important questions which arise on this appeal are the constitutionality of the prohibitory feature of the act of April, 1855; whether foreign liquors are exempted from its operation, and whether any portion of the old excise law is still in force.

If the prohibitory feature of the act of 1855 be unconstitutional, it must be by reason of its conflict with some provision of the constitution of this state or the United States. To a correct appreciation of this question, it is important that the difference in character between the state and national constitutions should be understood and remembered. The constitution of the United States consists only of powers delegated by the states and by the people of the states; and powers not thus delegated, or necessarily implied, or prohibited by it to the states, are reserved by it to the states respectively, or to the people thereof. (10*th amendment U. S. Con.*) The right to regulate commerce with foreign nations was one of the powers delegated.

*First.*—So far as the constitution of the United States is concerned, I consider the question conclusively settled by the cases in the 5*th How. U. S. Rep., p.* 504 and subsequent pages. Those cases seem to cover the whole ground. One of those cases involved the constitutionality of the liquor law of New Hampshire, which entirely prohibited sales. These cases were twice argued by able counsel, and each judge delivered his own opinion, and the decision was unanimous that the law was constitutional, and that it was legitimately within the province of the legislature to enact it. The chief justice in his opinion, said, " The power of congress over commerce does not extend further than the regulation of it with foreign nations and among the several states; that beyond these limits the states have never surrendered their power over trade and commerce, and may still exercise it, free from any controlling power on the part of the general government. Every state, therefore,

may regulate its own internal traffic, according to its own judgment, and upon its own views of the interest and well being of its citizens." Again, " If any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I can see nothing in the constitution of the United States to prevent it from regulating and restraining the traffic, or from prohibiting it altogether, if it thinks proper. Of the wisdom of this policy it is not my province or my purpose to speak. Upon that subject each state must decide for itself. I speak only of the restriction which the constitution and laws of the United States have imposed upon the states." (*See also* 7 *How. U. S. Rep.*, 283; 11 *Pet.*, 102; 1 *Kent. Com.*, 391.)

*Second.*—Does the prohibitory feature of the said act of April, 1855, conflict with any provision of the state constitution? This question may properly be classed under two heads. 1st. The power of the legislature. 2d. The restriction of the constitution.

1st. As to the power of the legislature. The constitution of this state is not a grant of power. It was created by the people in their sovereign character, and is a restriction upon the powers which the legislature would otherwise possess by the common law were there no constitution. The acts of that body within the restrictions imposed by that instrument, " are as absolute and uncontrollable as the laws flowing from the sovereign power under any other form of government. (1 *Kent. Com.*, 448.) This is a representative government, and when the representatives of the people, in their legislative capacity, enact a statute, it is the sovereign will declared by the proper authority of a legally constituted government. Such act, unless in conflict with the constitution, is the law of the state, binding upon the citizens and the courts. In *Cochran v. Van Surlay*, (20 *Wend.* 381,) Senator Verplanck remarks, " it is difficult upon any general principles to limit the omnipotence of the sovereign legislative power by judicial interpretation, except so far as the express words of a written constitution give that authority. There are indeed many *dicta*, and

some great authorities holding that acts contrary to the first principles of right are void. The principle is unquestionably sound as the governing rule of a legislature in relation to its own acts, or even those of a preceding legislature. * * * But I can find no authority for a court to vacate or repeal a statute on that ground alone."

In 5 *How. U. S. Rep.* above cited, Mr. Justice McLean says: " In all matters of government and especially of police, a wide discretion is necessary. It is not susceptible of an exact limitation, but must be exercised under the changing exigencies of society. In the progress of population, of wealth and civilization, new and vicious indulgences spring up, which require restraints that can only be imposed by the legislative power. When this power shall be exerted, how far it shall be carried, and when it shall cease, must mainly depend upon the evil to be remedied. To guard the health, morals and safety of the community, is one duty of government; to that end the laws of a state may prohibit the sale of property and *even authorize its destruction."* " The lawgiver," says Chancellor Kent, " has the right to prescribe the mode and manner of using property, so far as may be necessary to prevent the abuse of the right, to the injury or annoyance of others, or the public. The government may, by general regulations, interdict such uses of property as would create nuisances, and become dangerous to the lives, or health, or peace, or comfort of its citizens."

And in an opinion, by one of the ablest lawyers of this state, written to defeat the operation of this law, the principle was conceded " that the state legislature in its sovereign capacity may regulate property, and under this head may restrict and control its use, regulate the mode of sale, and even prohibit its use altogether. They may also direct its destruction at once and absolutely. But all this must be done, and can only be done, for some legitimate ulterior purpose within legislative competency. They may do all this, when necessary, for the preservation of life or health, of religion or morality. But in a free country, where property is protected under a paramount

fundamental law, the necessity must clearly exist." He there hinges his opinion on the question, whether the legislature or the court is ultimately to determine this necessity? He holds that the power rests with the court. In that I think him mistaken. The judiciary have no power or authority to declare void an act of the legislature solemnly passed, either on an assumed ground of natural equity or want of probable cause. (20 *Wend.* 381.) The courts can only declare an act of the legislature void, when it conflicts with the constitution. Any principle which would allow the judiciary to go further, and judge of the necessity for legislative enactments, and as they should deem them necessary or unnecessary, declare them valid or invalid, would place the people, in their representative capacity, subordinate to the judiciary, and the courts higher than the constitution. I can not subscribe to any such monstrous theory. The legislature must be its own judge of the necessity for such laws as it shall enact; there the power is reposed by the common law, recognized and sanctioned by the constitution, and unless its acts trench upon the provisions of that instrument, they become the law of the state, and are beyond the reach of judicial repeal. (*De Camp* v. *Eveland*, 19 *Barb.* 83, 93; *Hartwell* v. *Armstrong*, 19 *Barb.* 168–9.) If the legislature proved unequal to the trust, or violate the confidence reposed in them, the means of correction is to be found in our periodical elections. (19 *Barb.* 83.)

2d. Does that part of the present act under consideration, conflict with the constitution of the state? · The ground of objection is thus stated by counsel: " This law destroys the second and sixth sections of article first of the state constitution, under which the rights and privileges of the citizen are secured, as well as his life, liberty and property," and for other considerations the court are referred to that numerous catalogue of extrajudicial opinions, which have, since the passage of this law, been circulated in every portion of the state.

The second section of article I of the constitution, is as follows: " The trial by jury, in all cases in which it has been heretofore used, shall remain inviolate forever." Surely the

The People *v.* Quant.

principle of prohibition in no particular interferes with the right of trial by jury; and the right of trial by a common law jury of twelve men, by virtue of the constitution, never existed to persons guilty of offences below the grade of grand larceny, as I have endeavored to show in another case decided this same term.

That part of section six to which reference is made is as follows: " No person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment by a grand jury; nor shall he be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law." It will be perceived that no part of this section has any application to the question presented by this appeal. That part of the act prohibiting the sale of intoxicating liquor, and providing penalties for its violation, creates no " infamous crime " as defined by our statutes; compels no one to be a witness against himself; nor deprives any one of life, liberty or property with- out due process of law. If other parts of the act conflict with this or any other section of the constitution, it will not affect the valididy of those provisions free from such objections. (*Fisher* v. *McGin,* 1 *Gray, Mass. Rep.* 21.) By this, how- ever, I do not mean to concede that any portion of the pro- visions of the act of April, 1855, are in conflict with the constitution. I only mean to be understood as confining myself strictly to the questions legitimately before the court.

One of the main arguments urged against this law is, that liquor is property, and as such, entitled to protection under the last clause of the section of the constitution above cited. That intoxicating liquor is property is freely conceded; it is so recog- nized throughout the act. The right to acquire, hold and traffic in property is recognized as a natural right, and when acquired is entitled to claim and receive protection from the law. Life, liberty and property, although entitled to protection, are each liable to forfeiture for a violation of the law. Thus, " If a man commit murder he forfeits his life; if he commit felony he forfeits his liberty; if he commit a misdemeanor he forfeits his

property, by way of a fine." But this can only be done by due process of law. And what is due process of law? " Law is a rule of action prescribed by a superior and which an inferior is bound to obey;" and process of law is the mode of proceeding in the several courts prescribed by the law-making power. There is process by the common law, and process by the statute law. In the act of April, 1855, the mode of proceeding is provided by the law itself, and is by process of statute law. If the act, or any portion of it, is otherwise constitutional, the violators of such act or portion may be deprived of their property under its provisions, and it will be by due process of law.

Prohibiting the sale of liquor as a beverage does not destroy it as property. Its sale for mechanical, chemical and medicinal purposes is allowed by the act. It is true, that limiting and restricting the purposes for which liquor may be sold, may depreciate its price in the market; still, as property, it is physically untouched, and as useful as ever, for all other purposes. Although unconstitutional to pass laws depriving a citizen of his property, a law, the tendency of which is to reduce the price of a certain species of property in the market, will not for that reason be declared unconstitutional.

I have not been able, from the light afforded me by the counsel for the defendant, even with the aid of the numerous opinions to which the court were cited, to find the first section or clause in the constitution of this state, which, by word or implication, restrains the legislature from passing laws regulating or prohibiting the traffic in intoxicating liquors, and providing penalties for its violation; nor have I been able to discover that the prohibitory clause of the act under consideration conflicts with any of the provisions of that instrument.

*Third.*—It is next insisted that the conviction was wrong, because " it was not proved that the liquor sold or given away was not liquor the right to sell which in this state is given by any law or treaty of the United States." I had supposed the law well settled that " in an action for a penalty given by statute, it was not necessary for the prosecutor to disprove any qualification; that in such case the *onus probandi* lay upon the defendant "

It was so held in *Potter* v. *Deyo*, (19 *Wend.* 361,) and the principle recognized in *Smith* v. *Joyce*, (12 *Barb.* R. 21, 26.) I regard such still to be the law; and in this case, if the liquor sold was for any reason privileged, the burden of establishing that privilege rested with the defendant.

But I deny that foreign liquor, when sold by any other than the importer in the original package, is by the act exempted from the operation of this law. The first section prohibits the sale of all intoxicating liquor except as provided by said act, and closes with these words: " This section shall not apply to liquor the right to sell which in this state is given by any law or treaty of the United States." It is under this clause that foreign liquor is claimed to be exempt. There is no express law or treaty of the United States which gives the right to sell liquor in this state. The right to sell is only claimed as incident to the right to import; and the United States Supreme Court held, that as the right to regulate commerce with foreign nations is vested solely in congress, and as under that right congress admits the importation of foreign liquor in packages, that while such importation continues in the hands of the importer, in the form and shape in which it was introduced, it continues a *part of the foreign commerce* of the country, and that the authority to import necessarily carried with it the right to sell in the form and shape in which it was imported; but when the original package was broken up for use or retail by the importer, or had passed from his hands into the hands of a purchaser, *it ceased to be an import*, and became subject to the laws of the state. This is all the law, or treaty, of the United States on the subject. This clause of section first was added to avoid conflict with this decision. But it is argued that the right to sell by the importer, even though it be in the original package, being conceded, it is liquor the right to sell which is given, and that being once exempted from the operation of the law, it so continues, no matter through how many changes it may afterwards pass. If such construction comported with the intent of the legislature,

and fulfilled the purposes sought to be accomplished by the act, it might be adopted without doing violence to the language of that particular clause of the act. But it is apparent that such construction would be entirely foreign to the intent of the legislature, and operate to defeat the very object and purposes of the statute. In the construction of the statutes the intention of the maker is to govern, although such construction may seem contrary to the letter of the statute. ( 1 *Pet. Rep.*, 64; 2 *id.* 662; 15 *J. R.* 358; 3 *Cowen's R.* 89; 1 *Seld.* 562.) So in statutes penal, as well as others, an interpretation must never be adopted that will defeat the purposes of the act if it will admit of any other reasonable construction. ( 1 *Seld.* 562; 9 *Wheat.* 381.) Penal statutes are to be construed strictly, but not against the manifest intent of the legislature. (2 *J. R.* 379; 2 *Cow. Rep.* 410; 5 *Wheat.* 76; 8 *Pick.* 370.) If the general meaning and objects of a statute should be inconsistent with .he literal import of any particular clause or section, such clause or section should be construed according to the spirit of the act, if the intent of the legislature be clear and manifest ( 1 *Pick.* 248; 10 *id.* 235; 20 *id.* 267.) Remedial statutes are to be so construed, if possible, as to suppress the mischief and advance the remedy. ( 1 *Ham.* 206, 385, 481.) Many other authorities might be cited to the same effect. Whether or not the language used in the last clause of section first was the most clear and explicit that could have been adopted to enunciate the intent of the legislature, it is not now important to inquire. The intent is so apparent from the whole act taken together, that it can only be mistaken by the willfully blind. If the usual mode of construing statutes is adopted for the construction of this act, foreign liquors, after they cease to be " a part of the foreign commerce," are no more exempted from its operations than are liquors manufactured within the state.

*Fourth.*—It was further insisted that " the legislature had no power to prohibit the pursuit of any of the common avocations of life, or of any of the ordinary means of obtaining a iivelihood." I have already said all that is necessary of legislative power. Before the passage of this act, the sale of

The People *v.* Quant.

intoxicating liquor, in quantities less than five gallons, unless the vendor had a license, was prohibited by law; and it is difficult to distinguish the difference between prohibition in the present law and the principle which lay at the foundation of the old excise law. The difference I apprehend is only in degree. Licenses to sell as a beverage are now prohibited altogether, while under the old law such licenses were permitted and a commission created which might issue them; but the commissioners were not bound to license. (1 *Hill's Rep.*, 655.) They might refuse, and sometimes did refuse; and when they did so, prohibition under five gallons was as complete within their jurisdiction as now. By the present act, the legislature has assumed to itself the discretion formerly vested in the board of excise, and said no license shall be granted. Prohibition was a prominent feature of the old law, and yet it was never, for that reason, deemed unconstitutional. It is true, the old law did not interfere with the traffic in quantities above five gallons, but that does not affect the principle. If it was constitutional for the legislature to prohibit the traffic in quantities less than five gallons, it most assuredly is in quantities over five gallons. The power existing, it may be exercised at such times and in such manner as the legislature shall see fit.

But supposing the act of 1855 void; the old excise law would then be left in full force. The defendant is shown to have sold gin, beer, and whiskey at different times to be drank in his house. This he had no right to do under that law, without a license, and it is not pretended that he any such license. In such event he would be liable under the old law for a greater penalty than was imposed by this conviction, although entitled to a discharge from this particular proceeding. According to my understanding, certain sections of the old law still continue in force, notwithstanding the validity of the new statute. The act of April, 1855, only repeals those acts and parts of acts inconsistent therewith. Those provisions of the old law which prohibit the sale of intoxicating liquor without a license, are in no particular inconsistent with the present act, and therefore by the well-established rules of construction, they are not

repealed. In the language of Justice Edmonds, " the several statutes operating upon the same subject being in *pari materia* are to be read together as one law, and they say no man shall sell without license, and no man shall have a license."

Several points preliminary to the principal questions were made by the defendant, none of which I deem well taken.

My conclusions from these premises are, that the legislature of this state has the power to enact laws prohibiting the sale of intoxicating liquors, and to provide penalties for their violation:

That the act of April 9, 1855, so far as it prohibits the sale of intoxicating liquors, imposes penalties for its violation, and provides for their enforcement, is not in conflict with any article or section of the constitution of the United States or of this state:

That foreign liquor, after it has passed beyond the hands of the importer, or the original package is broken for use or sale, so that it ceases to be foreign commerce, is not exempted from the operation of the statute by the last clause of section one:

That those sections of the old excise law, which prohibited the sale of all liquors in quantities less than five gallons without a license, are not repealed by the present act, but still remain in force.

The conviction and sentence of the Special Sessions should be affirmed.