Mr. Justice CLIFFORD
 

 delivered the opinion of the court,-
 

 This was a libel of information in a cause of seizure and forfeiture, and the case is brought here by an appeal from the decree of the Circuit Court of the United States for the Southern District of New York. , Substance of the charge; as contained in the libel of information, is that tlie bark Weathergage was fitted, equipped, loaded, and otherwise prepared in the port of New York for the purpose of carry' ing on a trade or traffic in slaves to some foreign .country.; or for the purpose of- procuring negroes, mulattoes, or persons of color, from some foi'eign country, to be transported to some other port or.place, to be held, sold, or otherwise-disposed of as slaves, or to be held to service or labor.
 
 *
 

 Process was served on the 23d day of October, 1860, and on the 80th of the same month, John Morris, intervening-
 
 *380
 
 for the interest of himself as owner of the vessel, and as the carrier of the cargo, appeared before the court and made claim to the same, and was allowed to make defence. Testimony was taken, and a decree, condemning both vessel and cargo,, was entered in the District Court. Claimant appealed to the Circuit Court, and the record shows that additional testimony was taken in that court, and that the decree of the District Court was subsequently in all things affirmed. Appeal was then taken by the claimant to this court, and the parties have here been again fully heard.
 

 1. Condemnation and forfeiture were decreed both in the District and Circuit Courts, upon the ground that the evidence shows that the vessel was fitted, equipped, and loaded, or caused to sail, for the. purpose of engaging in the slave-trade. Claimant denies that the finding was warranted by the evidence, and that is the principal question in the case. Undoubtedly, it is the preparation of the vessel, and the purpose for which she is to be employed, that constitute the offence, and draw after it the penalty of forfeiture. As soon, therefore, as the preparations have progressed so far, as clearly and satisfactorily to show the purpose for which they are made, the right of seizure attaches.
 
 *
 

 Contrary to the views of the claimant, the counsel for the United States insist that the character of the preparations for the projected voyage was such as to indicate clearly that the purpose was the same as that charged in the libel of information. They admit that the circumstances given in ■evidence show that the projectors of the voyage had skilfully determined to give it the appearance of an honest and lawful enterprise; but they insist that a careful scrutiny of the evidence will show that the guilty purpose is not so successfully covered up with the garb of innocence as to conceal the true features of the transaction.
 

 2. Looking at the evidence, it is apparent that it is, in its general characteristics, substantially the same as that exhi
 
 *381
 
 bited in the other slave-trade cases decided at the present term. Differences are seen in the details of the evidence, but the quality and general nature of the proofs are substantially similar. Title of the bark, on the 5th day of September, 1860, appears to have been in one J. T. Woodbury, and the record shows that he on that day made a bill of sale of the same to one John Morris, of New Yórk, for the sum of twelve thousand dollars. Counsel of the. claimant introduced the bill of sale of the vessel, but- they did not examine the person who witnessed its execution.
 

 8. Proofs show that the Weathergage is a bark with two decks and three masts, and that she is of the burden of three hundred and fifty-five tons. Her outward foreign manifest, sworn to by the master, Edward' Mitchell, on the 12th of September, 1860, represents her as bound to Hong Kong
 
 vid
 
 Ambriz, with a crew of fourteen men, and a cargo valued at nearly nineteen thousand dollars. Statements of the manifest are, that it contains “ a full, just, and true amount of all the goods then actually laden on board the vessel,” and that the “ cargo is truly intended to be landed in the port of Hong Kong
 
 vid
 
 Ambrizbut the shipper’s manifest states that the merchandise is truly intended to he exported to Ambriz, which is a place on the coast of Africa.
 

 4. Suspicion attaches strongly to the equipment of the vessel. She had a temporary between-deck, made of rough boards, about five and a half feet below the main deck, and which, was not necessary to carry the cargo laden on board; and she had a .large quantity of lumber stowed between decks, and manifested as lumber, and eight thousand three hundred and eighty-two feet of pine boards. She had two surf-boats, besides four other small boats, together with rudders and tillers and
 
 “
 
 oars for the same.” In addition to the articles mentioned, she also had seventeen coils of rope, three bolts of sail duck, eight anchors, coopers’ tools, nails, and almost every variety of article which is essential in the fitment of a slaver. Mention should also be made, that she had as part of her fitment, though included as cargo, twelve swivels and a large quantity of muskets and powder.
 

 
 *382
 
 5. Portions of tbe cargo proper should also be noticed, as affording strong grounds of presumption that the purpose of the voyage was such as is charged in the information. Among other articles, it contains eighty barrels of bread, eighty-five barrels and one hundred half barrels of rice, fifty-seven barrels of beef and pork, besides four barrels of flour, and six barrels of beans and meal, and three barrels of vinegar. Besides the articles mentioned, the manifest also shows that she had one hundred and fourteen casks filled with water, and shooks and headings to make ninety-six more, together with forty bundles of iron for hoops, such as is used on such casks. She had also ten furnaces and boilers, with a large quantity of fire-wood, and three hundred and seventy-five sheets of copper. Argument for the claimants is, that the cargo was as suitable for a lawful voyage to the supposed port of destination, as for the purpose charged in the libel of information; but it is not possible to accede to that proposition. On the contrary, it seems to us, in view of the evidence in the case, that the manifest is a “ more complete one, in every respect, for engaging in the 3lave trade,” than any one heretofore presented to the court.
 

 6. Although the master testified that the cargo was intended to be landed at Iiong Kong, the great weight of the evidence shows that it was destined for Ambriz, or some other port on the coast of Africa. The shipper was not called as a witness in the District Court, but he was examined in the Circuit Court. He testified that he owned and shipped the cargo, and that it was to be discharged at Am-briz, and that he was not to have anything to do with, the vessel, after the cargo was discharged. Libellants prove that there is no trade from New York to Hong Kong, or any other port in China, by the way of Ambriz, or any-other port on that coast, and that no vessel ever cleared from the port of New York for such a voyage.
 

 7. None of the witnesses, on the one side or the other, know the alleged owner and claimant of the vessel. Satisfactory proofs were introduced, showing that there was not then and has not been since, to the time of the hearing, any
 
 *383
 
 person by that name engaged' in the shipping business in the port of New York. Two or more clearance clerks were examined, and they testify that they never heard of a business man there of that name. Persons who have for years been engaged in the China and African trades were also examined, and they testify to the same effect. Even Schmidt, the ship-broker and partner of the person who sold the vessel for twelve thousand dollars, testifies that he never saw him but once, and that was in the. street, and that he did not know whether he was the actual owner, or merely the agent of the real purchaser of the vessel. Woodbury, the grantor of the vessel, was not called by the claimant. When the appeal was taken in the Circuit Court, the petition was signed by his counsel, and the bond given on the appeal, although drawn for the signature and seal' of the claimant, was executed only by a surety, and the surety testifies that he never heard of such person until the morning of the day ■when his examination as a witness took place. Neither the master nor any of the crew are called to explain any of these inculpatory circumstances, nor is there any attempt to afford any explanation upon the subject. For these reasons, we are of the opinion that the finding in the court below was clearly correct. The decree of the Circuit Court is, therefore,
 

 Affirmed.
 

 *
 

 1 Stat. at Largo, 347 ¡ 3 Id. 451.
 

 *
 

 The Emily and Caroline, 9 Wheaton, 381; The Plattsburg, 10 Id. 133; United States
 
 v.
 
 Gooding, 12 Id. 460.