105 So.2d 63

**STATE of Alabama**

v.

**John W. LAIDLAW, d/b/a Laidlaw Contracting Company.**

**I Div. 735.**

Supreme Court of Alabama.

Sept. 11, 1958.

John Patterson, Atty. Gen., Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

W. B. Hand and Hand, Arendall & Bedsole, Mobile, for appellee.

GOODWYN, Justice.

The State Department of Revenue made a final assessment against John W. Laidlaw, individually and doing business as Laidlaw Contracting Company, appellee here, claiming that said taxpayer had obtained and was using improper tags on a truck and trailer belonging to him. The taxpayer appealed to the circuit court of Mobile County, in equity, where, on evidence taken ore tenus, a decree was rendered declaring the assessment void. The State prosecutes this appeal from that decree.

The taxpayer, sometime prior to July 20, 1953, ordered, through a truck dealer in Mobile, a model R–190, 1¾ ton, 1953 International Harvester truck (having a gross vehicle weight of 21,000 pounds). This truck was delivered to the taxpayer on July 20, 1953, who thereafter obtained an H–2 tag for the truck and a T–2 tag for the trailer used with the truck. These tags were based on the truck having a rating of 1¾ tons. The cost of the truck tag for this rating was $22.50, as prescribed by § 697, Tit. 51, Code 1940. The tag for the trailer is prescribed by § 703, Tit. 51, Code 1940, to be "fifty percent of the cost of the license tax (sic) of the motor vehicle by which it is drawn." The State contends that the truck had a rating of 5 tons, gross vehicle weight of 25,500 pounds, the rating for a model R–194 truck; it being insisted by the State that, in view of the provision in § 697, Tit. 51, supra, that a truck license is to be based "on the manufacturer's rated capacity stamped on the truck," the truck, for licensing purposes, was a model R–194 and not a model R–190, because the metal plate affixed by the manufacturer to the doorpost of the truck showed it to be a model R–194. The cost of a license tag for a 5-ton truck is prescribed by § 697 at $400. The assessment against the taxpayer was for the difference in licenses for a 5-ton truck with trailer and a 1¾ ton truck with trailer, plus penalties and interest.

The position taken by the taxpayer is that the truck, in actual fact, is an International Harvester Model R–190, 1¾ ton truck, and so rated by the manufacturer, regardless of what the plate shows. (Whether there was a plate on the truck is disputed. However, the trial court seemed to agree that the evidence supported the State's contention that the plate was actually on the truck when checked by the officers, and that the plate showed the truck to be a model R–194.) The State seems to take the position that it is immaterial what rating the truck actually has because the license tax is determined by the rating shown on the plate, even though that rating is erroneous. In other words, the plate, and the plate alone, furnishes the exclusive basis for determining the license tax.

As we understand the evidence it amply supports a finding that the truck, in

fact, is a model R–190, 1¾ ton truck, gross vehicle weight of 21,000 pounds. That is the truck ordered by the taxpayer from the local dealer; it is the truck ordered by the local dealer from the manufacturer and the manufacturer's invoice to the local dealer shows it to be that model truck. It might be well to note here that there was on the hood of the truck a designation "R–190". The State contends that this referred to the "series" to which the truck belonged and not its model.

This brings us to a consideration of § 697, Tit. 51, supra. Whether the taxpayer is liable for the assessment made against him depends upon what is intended by the provision there made for basing a truck license "on the manufacturer's rated capacity stamped on the truck." Does this mean that the rating stamped on a truck is absolutely controlling? Or, is the true capacity as rated by the manufacturer the *ultimate controlling factor?* In other words, if a truck admittedly has a manufacturer's rated capacity of 5 tons, but nevertheless is stamped as a 1 ton truck, would it be subject only to a 1 ton license? Also, would there be any liability for license tax if the manufacturer should fail to stamp the rated capacity on the truck?

 It seems to us that to follow the State's insistence that the license tax is determined solely by what is "stamped" on a truck would unavoidably lead to an illogical, unreasonable and impractical operation of the statute. It would seem that a truck manufacturer who, through error, stamps a truck having a true rated capacity of 5 tons as one having a capacity of 1 ton, could thereby, in effect, render the statute discriminatory in its application. It would mean, too, that no tax could be collected unless the manufacturer's rated capacity is stamped on the truck. We do not think such was the legislative intent. The obvious legislative purpose was to base the license on the actual capacity of the truck as rated by the manufacturer, the presumption being that the manufacturer will stamp on the truck its true rated capaci-

ty. However, it is the actual rated capacity, not that erroneously stamped on the truck, which determines the license tax due. The same would be true if there were no rated capacity stamped on the truck.

The following rule of construction, long approved by this court, seems most appropriate in this case:

"'An interpretation should never be adopted which would defeat the purpose of the statute, if any other reasonable construction may be given to it, The Emily, 9 Wheat. 381, 6 L.Ed. 116; and that the literal interpretation of an act is not always that which either reason or the law approves. The inartificial manner in which many of our statutes are framed, the inaptness of expressions frequently used, and the want of perspicuity and precision not unfrequently met with, often require the court to look less at the letter or words of the statute, than at the context, the subject-matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver.'" State v. Thames, Jackson, Harris Co., 259 Ala. 471, 473, 66 So.2d 733, 734; Thompson v. State, 20 Ala. 54, 62.

The Attorney General of Alabama, in an opinion rendered on August 23, 1938 (Quarterly Report of the Attorney General, July 1, 1938–Sept. 30, 1938, Vol. 12), shortly after enactment of what is now § 697, Tit. 51, supra (Act No. 194, appvd. July 10, 1935, § 384, Schedule 158.5, Gen. Acts 1935, pp. 256, 521, as amended by Act No. 93, appvd. Feb. 12, 1937, Gen. and Loc. Acts Spec.Sess. 1936–1937, p. 108) had this to say concerning the determination of the rated capacity of a truck for licensing purposes, viz.:

"Your fourth inquiry involves the method of determining the manufacturer's rated capacity when the identification mark has been lost. The rated capacity is a question of fact and remains the same regardless of any identification mark. * * *"

This seems to be in accord with our holding.

There is some argument in briefs as to whether the word "stamped", as used in § 697, includes the affixing or attaching to a truck, by brads or screws, of a metal plate or disc, as the State contends was done in this case. In view of what has already been said there is no occasion to discuss this point.

Argument is also made by the taxpayer that the only question presented on this appeal is one of fact, in view of a stipulation entered into by the parties at the commencement of the trial in the lower court. Although we are inclined to the view that the stipulation could be considered as so limiting the question for decision, counsel for the State earnestly insist that such was not intended. Under the circumstances, we have thought it best to pass over that issue and get to the heart of the question presented, as already discussed.

Motion to strike appellant's reply brief.

Appellee filed a motion to strike appellant's reply brief because not filed within 10 days after the filing of appellee's reply brief. Rule 12 of the Revised Rules of the Supreme Court, 261 Ala. XIX, Code 1940, Tit. 7 Appendix, Cum. Pocket Part, includes the following provisions:

"Counsel for appellant may, within ten days after service upon him of appellee's brief, file a reply brief thereto, but such reply brief shall be limited to answering the matters contained in appellee's brief and shall not set up any new matter not in answer to cross-errors assigned and argued, which is not contained and argued in appellant's original brief. Counsel for appellee may, within ten days after service upon him of appellant's answer to cross-errors assigned and argued in appellee's brief, file a reply brief thereto, but such reply brief shall be limited to answering the matters set up in answer to such cross-errors argued. Thereafter no briefs may be filed except with consent of the court, or a justice thereof, upon written petition therefor."

One of the obvious purposes of this rule is to provide a time schedule for filing briefs to the end that a case may be submitted without undue delay. Another objective, implicit in the rule, is to aid this court in its consideration of a case. It is to be noted that the only reply brief specifically provided for, except when cross-errors are assigned, is by appellant in answer to appellee's reply brief. Additional briefs may be filed only "with consent of the court, or a justice thereof, upon written petition therefor."

The thought behind the rule is that it would be helpful and less time consuming to all concerned if all matters to be insisted on by appellant are argued fully in his original brief so that appellee may take issue with the errors and points relied on for a reversal. Since the appellee, in his reply brief, may appropriately present arguments and matters not fully dealt with by appellant in his original brief, the rule gives to the appellant, without the necessity of securing the consent of the court or a justice thereof, the right, at his election, to file a brief in reply to appellant's reply brief. But this right continues only for 10 days after service on him of appellee's brief. If not filed within that time the *right* to file a reply brief, given by the rule, is lost. However, as already noted, the rule also provides for filing of additional briefs with the "consent of the court, or a justice thereof, upon written petition therefor." Although appellant has not filed such petition we do not think that fact calls for a mandatory striking of appellant's reply brief, thus precluding our consideration of it. In the ordinary course, a case on appeal is not considered until all briefs are in. By requiring consent for filing additional briefs some measure of control is given the court in determining when a case is ready for consideration. However, we would not interpret the rule as taking away from the court the exercise of discretion in considering additional briefs.

In the instant case appellant's reply brief, although filed after the 10 days allowed, was filed 28 days prior to submission of the case on oral argument, with a copy being served on appellee. We do not think appellee has been prejudiced by our consideration of said brief, which we have done in the exercise of our discretion. The motion to strike is due to be denied.

Motion to strike appellant's reply brief is denied.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and MERRILL, JJ., concur.