Fob JAMES, as Governor, and on behalf of the State of Alabama and its citizens; Alabama Medical Services Administration; and W. H. Kerns, Commissioner, Medical Assistance, Plaintiffs,

v.

Patricia Roberts HARRIS, Secretary of Health and Human Services; Leonard D. Schaeffer, Administrator, Health Care Financing Administration; Virginia M. Smyth, Regional Administrator, Region IV, Defendants.

Civ. A. No. 80–170–N.

United States District Court,
M. D. Alabama, N. D.

Sept. 26, 1980.

Charles A. Graddick, Atty. Gen., State of Ala., Ira DeMent (Sp. Counsel to Governor Fob James), Herman Hamilton, Jr. (Sp. Asst. Atty. Gen.) and Shapard D. Ashley, Montgomery, Ala., for plaintiffs.

Barry E. Teague, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., and Carl H. Harper, Regional Atty., F. Richard Waitsman, Asst. Regional Atty., Dept. of Health, Ed. & Welfare, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

This cause is before the Court on defendants' motion for summary judgment filed herein on July 22, 1980, and on plaintiffs' motion for summary judgment filed herein on August 1, 1980. Said motions were submitted to the Court and oral arguments of counsel were heard on September 2, 1980. Upon consideration of the motions, affidavits, briefs and arguments of counsel, this Court finds that when construing the evidence in favor of the plaintiffs there remains no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law for the reasons hereinafter stated.

Jurisdiction of this Court is founded on an actual controversy under 28 U.S.C. § 1331, within the context of 28 U.S.C. § 2201.

Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 et seq., established a program, commonly termed "Medicaid," to furnish medical assistance to certain needy individuals whose resources are insufficient to meet the cost of necessary medical services, including care in skilled nursing homes. States desiring to participate in this program, among other things, are required to establish a single state agency to administer this program, and to submit a state plan, setting out the proposed method of operation. The plan must be approved by the Secretary of the Department of Health and Human Services, formerly the Department of Health, Education and Welfare (hereinafter referred to as Secretary). Although states are not required to participate in this program, all states have chosen to do so.

Medicaid is financed jointly by the federal and state governments through a procedure of federal matching of state funds. Prior to the beginning of each quarter, each state is required to submit a report to the Secretary estimating the expected expenditures for approved medical care. The report must also provide the amount appropriated or made available by the state for such expenditures, denominated as state funds.

The actual administration of the program is delegated to the states. The state agency receives the federal funds and makes payments directly to the providers of medical assistance, including skilled nursing homes.

Alabama has been participating in the Medicaid program with the Alabama Medical Services Administration serving as its single state agency. Prior to the passage of Act No. 80–113, 1980 Regular Session, Alabama followed the practice pursued by all other states of deducting Medicaid patients' income from the cost of care of the nursing homes, and thereafter seeking federal matching only on this reduced amount. (Although the parties refer to the federal and state funds as "matching" funds, actu-

ally in Alabama federal funds are contributed on a basis of approximately 70 per cent federal funds and 30 per cent state funds.)

For example, if the monthly charges of a nursing home were $600.00 and if a patient in a nursing home received $225.00 in social security monthly income, a minimum of $25.00 of this sum would be set aside as a personal needs allowance. The balance of $200.00 would be paid to the nursing home and the state and federal governments would contribute a total of $400.00 with the federal government absorbing approximately 70 per cent of this $400.00 expense, or $280.00, and the state, 30 per cent, or $120.00.

Act No. 80–113 and the Alabama regulations promulgated pursuant to said Act require the patients to sign a form authorizing the nursing home to receive all earned and unearned income of the patients except Supplemental Security Income payment, the personal needs allowance and sheltered workshop earnings. A patient who fails or refuses to abide by this rule will become ineligible for Medicaid benefits. Under the provisions of Act No. 80–113, the nursing home immediately pays this money to the county tax collector who, in turn pays the funds directly to the Alabama Medical Services Administration.

This income of the patient in the nursing home does not go to reduce the gross amount required to be paid by the state and federal governments. Under Act No. 80–113, the patient's income by reason of its collection by the state tax collector is transformed into state funds and its ultimate contribution to the cost of the patient's nursing home care is deemed to be part of the state's matching funds. The impact of Act No. 80–113 may be seen by returning to the example in one of the preceding paragraphs. Under Act No. 80–113, the patient's monthly social security income of $225.00 is reduced to $200.00 after deducting the personal needs allowance, which is then paid to the county tax collector. The state and federal governments must now pay their proportionate cost of the $600.00

monthly nursing home expense. The federal government pays 70 per cent or $420.00, and the state pays 30 per cent, or $180.00. Thus, by Act No. 80–113, in the hypothetical, Alabama has transformed an expense for its Alabama citizens residing in nursing homes of $120.00 per patient to a profit for the state of $20.00 per patient. Such an unnatural result from a plan which must have been approved by the federal agency charged with administering the program would seem highly unlikely. The fact that Alabama has not availed itself of this lucrative turnaround for the many years it has operated under the Medicaid program is also strong evidence that the parties heretofore have not construed the regulations as permitting the result sought to be achieved by Act No. 80–113. Obviously if the result sought by this Alabama Act is consistent with the terms prescribed by the Department of Health, Education and Welfare regulations, other states will adopt similar state laws. The absence of such state efforts by any state other than the belated action of Alabama in 1980 is also strong evidence that the parties operating under these federal regulations for many years have construed those regulations as not permitting what Alabama has attempted.

The Regional Administrator notified the Alabama Medical Services Administration that the procedure set out in Act No. 80–113 violated certain federal statutes and regulations and that income of the patients is not eligible to be considered as state funds for matching. Alabama Medical Services Administration and its Commissioner then filed this declaratory judgment action requesting this Court to find that Act No. 80–113 does not contravene federal statutes or regulations. In addition, plaintiffs requested a declaration that said Act may be implemented with the funds collected thereunder deemed eligible for federal matching.

This case is one of first impression in that, as already noted, no other state has required nursing home patients to pay their income directly to the state with the claim that these funds provided by the patient qualified as state funds eligible for federal

matching. The basis of Alabama's argument in support of the validity of this method is that no provision in the Social Security Act prohibits a state from appropriating patients' income and qualifying such funds as state funds. Hence, plaintiffs contend that they have merely chosen one of the many available methods for raising funds.

It is clear that the purpose of the Social Security Act and the regulations formulated thereunder is for the cost of nursing care to be shared by the patient, the state, and the federal government. The patient's share, if he has a source of income, is to be paid to the nursing home with the remainder of the nursing home cost to be shared by the state and federal governments. This purpose has been recognized and followed by every state, including Alabama, until Alabama enacted Act No. 80–113 in March, 1980.

Even if the Social Security Act did not expressly prohibit Alabama from treating the patient's income as a source for state matching funds, the Court when construing the statute "must look to the object in view, and never adopt an interpretation that will defeat its own purpose." (*The Emily*)' 9 Wheat. 381, 388, 22 U.S. 168, 171, 6 L.Ed. 116 (1824). This concept of statutory construction was long ago articulated by the Alabama Supreme Court as follows:

The court [must] look less at the letter or words of the statute, than at the context, the subject matter, the consequences and effects, and the reason and spirit of the law, in endeavoring to arrive at the will of the law giver. *Thompson v. State*, 20 Ala. 54, 62 (1852).

■ As already stated, this Court is of the opinion that the statutory scheme envisioned by Congress and the federal regulations was to have contributions from three sources; i.e., the federal government, the state, and the patient. Even though the state is given wide latitude as to how it shall raise the "state funds," it seems clear to the Court that the plan did not include taking the patient's money and allowing it to be called state matching funds.

Moreover, the method selected by Alabama of appropriating the income of the patients in the nursing homes clearly violates certain federal regulations, in particular, 42 CFR § 435.725. This regulation provides in pertinent part as follows:

The agency must reduce its payment to an institution for services provided to an individual specified in paragraph (b) * of this section, by the amount that remains after deducting the amounts specified in paragraph (c) ** from the individual's income.***

■ The regulation provides that the agency "must" reduce its payments to the

---

* The individual's specified in paragraph (b) are those eligible for Medicaid and are either aged, blind, disabled, or receive assistance under Supplemental Security Income or Aid to Families with Dependent Children.

** Commonly denominated as protected income, these amounts are allowances for personal needs, spouse and family maintenance, and expenses for medical and remedial care that are not subject to payment by a third party.

*** On April 11, 1980, subsequent to the enactment of Act No. 80–113, the phrase "the amount that remains after" was inserted in the above named regulation. 45 Fed.Reg. 24878, 24884 (April 11, 1980). Plaintiffs have argued that this regulation is inapplicable, contending that the insertion caused a completely different approach and therefore is a substantive change requiring compliance with the normal rulemaking process as set forth at 5 U.S.C. § 553. Plaintiffs admit that the regulation after the change requires a reduction to the nursing

home by the amount of a patient's nonprotected income. They claim, however, that prior to the change, the state was only required to reduce its payment by the amount of the personal needs allowance. But prior to the change and the enactment of Act No. 80–113, Alabama did not follow this approach. Rather, Alabama deducted the full amount of the patient's income, hence indicating that Alabama considered this to be the proper interpretation of the regulation.

In addition, the Department classified the change as one·correcting "technical and wording errors." 45 Fed.Reg. 24878 (April 11, 1980). It is a well settled principle of law that "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. ..." *New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1972). The Court recognizes that this precise point is not at issue, but concludes that an agency's interpreta-

nursing homes by a patient's non–protected income. This is not merely an eligibility standard, as plaintiffs argue, that requires a patient's income to be applied to the cost of care. Rather, it is a post–eligibility command for the reduction of payment. The payment of the entire amount of cost of care, as Alabama has done since April 1, 1980, is a direct violation of 42 CFR § 435.725 and thus, a violation of a condition for obtaining federal matching funds.

This Court appreciates the difficulty of Alabama and other states in trying to find the revenue to meet the soaring costs of funding the state's share of the Medicaid program. But the course pursued by Alabama of appropriating the patient's income, running that income through the tax collector and then designating those funds as state funds will not succeed. The program of joint state and federal funding of the Medicaid program is concerned with substance, not form. Act No. 80–113 violates not only express regulations but also the statutory scheme for financing the Medicaid program. A judgment and order will be entered in accordance with this memorandum opinion.

See also, D.C., 460 F.Supp. 689.

tion of its own regulation is entitled to even greater deference.

Moreover, the Court is of the opinion that the only logical interpretation of the regulation prior to the change was that the state agency was required to reduce its payments to nursing facilities by the Medicaid recipients' non–protected incomes. While the regulation was perhaps ambiguous, the change served merely as a clarification or interpretation. Therefore, compliance with the rulemaking procedures of 5 U.S.C. § 553 was not required, 5 U.S.C. § 553(b)(A), and 42 CFR § 435.725 is applicable to the present case.